Richardson v. Palmer.

JAMES RICHARDSON, Respondent, v. SAMUEL C. PALMER *et al.* Appellants.

St. Louis Court of Appeals, April 29, 1889.

1.  **Sale : FALSE REPRESENTATIONS.** The defendants, as administrators, sold to the plaintiff, at public sale, a bull belonging to their intestate's estate. Before the sale, the plaintiff inquired of a person in the defendants' employ, whether the animal was a good breeder, and was answered in the affirmative. It did not appear that the defendants authorized their employe to make that or any representation about the animal, or that they knew of his making it. Acting upon the plaintiff's advice, personally given to them before the sale, the defendants caused their auctioneer to announce to the assembled bidders, when about to sell, that nothing was guaranteed concerning the stock to be sold, except its pedigree and the title, and that the defendants knew personally nothing about its qualities. Nothing in the evidence tended to show that the defendants had, or claimed to have, any such knowledge, or that the plaintiff had any reason to believe that they had such. *Held* : The plaintiff could not maintain an action for damages against the defendants founded upon the fact that the bull was not a good breeder, because of the false representations in that connection made to him by the defendants' employe.

2.  **Agent : FALSE REPRESENTATIONS.** There are many cases in which fraudulent representations made by an agent will bind his principal, although the principal had given no actual authority for them, and had no knowledge of their being made. But it cannot be said that the bare facts that representations were made by the agent and that they proved to be false, would be sufficient in all circumstances to fix the liability upon the principal.

3.  **Practice, Appellate : THEORY OF TRIAL.** When a cause was tried in the court below and adjudicated on a particular theory, it must be reviewed by the appellate court on the same theory.

*Per Thompson, J., concurring.*

**4. Administrator's Sale:** WARRANTY BY AGENT. There is no implied warranty in an administrator's sale, and the presumption of law is that such a sale is subject to the rule of *caveat emptor.* In the absence of evidence to the contrary, a purchaser has no right to suppose that an agent of the administrator is authorized to bind his principal by warranting anything or representing anything. The fact in the present case, that the plaintiff advised one of the defendants not to warrant anything beyond title and pedigree, and the fact that this advice was acted upon in a distinct announcement by the auctioneer in the plaintiff's hearing, entirely negatives any conclusion that the plaintiff, in his purchase, acted upon the representations of the employe or agent, as being authorized by the defendants.

*Appeal from the Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND CAUSE DISMISSED.

*W W. Fry* and *W. O. Forrist,* for the appellants.

An agent of an administrator in the sale of property belonging to the estate cannot bind the administrator personally. It matters not what statements or representations were made by Harris, even as agent of defendants, as administrators they, defendants, are not liable. *Blood v. French,* 75 Mass. ( 9 Gray ) 197. Wait's Act. & Def. secs. 3 and 4, p. 478 ; Mechem on Agency, sec. 904, cites *Blood v. French, supra* ; The Monte Allegre, 9 Wheat, 646. The principal is not liable for the acts of the agent outside of the scope of his agency. Harris had no express authority. The evidence is he was not an agent. If "manager" of the sale that implied no authority to warrant, even if he had power to sell. *Meton v. Suffolk Mills,* 65 Mass. 589 ; Mechem on Agency, secs. 725, 726. It was a violent presumption for plaintiff to infer that Harris had authority to bind defendants personally by representations as to the condition of the stock. Especially when it was an auction

Richardson v. Palmer.

sale by defendants as administrators, as plaintiff well knew. If manager of the sale he was manager of administrator's sale, and the reasonable presumption would have been that he had no authority to bind them personally but represented them as administrators only. *State ex rel. v. Hays*, 52 Mo. 580. Authority of agent to bind principal if implied at all " can only be implied from facts. It is not to be created by mere presumption nor by any abstract consideration. The authority, if it exists at all, must find its source in the intention of the principal, either expressed or implied. If that intention cannot be shown the authority cannot exist." *Law v. Stokes*, 3 Vroom (N. J.) 249, 90 Am. Dec. 655 ; *Bickford v. Menier*, 107 N. Y. 490 ; Mechem on Agency, sec. 274 ; *Hopkins v. Tonquer*, 15 C. B. 140. The announcement of the auctioneer was that " the men would have to take the cattle as they saw them. That there was no warrantee or guarantee of any kind except as to title." This was the authorized terms on which the animal was sold, this was the contract and cancelled all alleged prior statements or representations. The auctioneer's announcement fixes the terms of sale and its conditions. *Fair v. John*, 23 Iowa 286 ; Baleman on Auctions, 114–117. If there was fraud as charged by plaintiff he could not recover because on his own statement he partook of the alleged fraud. He knew it was a free auction sale to the highest bidder and any agreement before the sale giving him an advantage was a fraud on other bidders and he cannot take advantage of it; he was *particeps criminis*. *Hinnen v. Newman*, 35 Kan. 709 ; Bigelow on Fraud, 582, 583, also 200–209 ; Greenwood on Public Policy, 183. And the fact that plaintiff went from Harris to the sale ring and of his own accord cautioned the defendant not to warrant the stock stamps the fraud on plaintiff and that he was endeavoring to gain by it. If a purchaser holds on to the property purchased and seeks to recover damages or the purchase

money, in an action at law, on the allegation of fraud
or deceit, the *scienter* then becomes the gist of the pro-
ceeding and must be proved. In this case it was not
claimed that defendants had any knowledge of the
alleged fraud. Nor is there any evidence that Harris,
if defendants's agent, had any knowledge of the alleged
defect that came to him during his agency. *Dunn v.
White*, 63 Mo, 184; *Richardson v. Palmer*, 24 Mo. App.
493; Story on Agency, 160.

*E. Robinson* and *G. B. Macfarlane*, for the
respondent.

Though defendants were administrators and were
at the time selling property which came into their
hands in their representative capacity, they were per-
sonally liable for any fraud and deceit practiced in the
sale. *Richardson v. Palmer*, 24 Mo. App. 487, and
authorities cited; *Platt v. Platt*, 12 N. E. Rep. 22.
As between an administrator and a person dealing with
him in respect to the property of the estate, the acts of
the administrator are personal and not representative;
his contracts and obligations bind him personally.
*Rittenhouse v. Ammerman*, 64 Mo. 197; *Ferrin v.
Myrick*, 41 N. Y 319. While a trustee cannot delegate
to another powers of a special and personal character,
he may still employ such assistants and agents as are
usual and necessary. 3 Redf'd on Wills, p. 567, sec.
134; Perry on Trusts, sec. 409; *Bales v. Perry*, 51 Mo.
449; *Julien v. Addatt*, 73 Mo. 581; *Bodine v. Ins. Co.*,
51 N. Y. 117; Mechem, Agency, secs. 190 to 197. A
principal is liable for the fraudulent representations
of his agent when made within the apparent scope of
his authority, although they were made without his
knowledge or consent, or even in violation of his express
instructions. Mechem, Agency, sec. 743; *Wolf v.
Pugh*, 101 Ind. 293; Evans, Agency, 594, 606; *Garretzer*

*v. Duenckel*, 50 Mo. 104 , *Griswold v. Haven*, 25 N. Y. 575; *Cousins v. Railroad*, 66 Mo. 576; *Brown v. Railroad*, 66 Mo. 595; *Rhoda v. Annis*, 75 Mo. 17; *Snyder v. Railroad*, 60 Mo. 416. The principal is also liable for the wrongful acts of his agent, done in the performance of his duty as agent, though without his knowledge, and in violation of express instructions, and though the act done may have been illegal and such as the principal had no right, under the law, to do. *Peterson v. Knoble*, 85 Wis. 81; Mechem on Agency, sec. 745; *George v. Gobey*, 128 Mass. 189. The announcement of the auctioneer, that the animal would be sold without warranty, did not effect previous representations of its condition, or release defendants from liability therefor. Story, Agency, sec. 107; Ewell's Agency, *122; 1 Wait's Act. & Def. p. 477, secs. 1–8; *Bartlett v. Rennell*, 4 Ad. & El. 792; *Ex parte German*, 12 Ves. 379; *Powell v. Edwards*, 12 East. 7; *Chouteau v. Goddin*, 39 Mo. 229; *Hopkins v. Tonquer*, 15 C. B. 130.

BRIGGS, J., delivered the opinion of the court.

On the twenty-second day of April, 1884, the defendants, as administrators of Launcelot Palmer, deceased, of Audrain county, Missouri, sold a lot of thoroughbred cattle belonging to the estate, at public auction, in the city of Chicago. The sale was made in pursuance of an order of the probate court of Audrain county, where administration was had on the estate of the deceased. At this sale plaintiff bought a certain bull, for which he paid eight hundred and five dollars. Out of this purchase has grown the present litigation. The plaintiff, in the first instance, brought suit against the defendants, as administrators, in the circuit court of Audrain county, where he obtained judgment. An appeal was had to the Kansas City court of appeals, and the latter court held that plaintiff could not maintain the action against the defendants in their representative

capacity. Thereupon, the plaintiff instituted this suit against the defendants (individually ), by which he seeks to recover of defendants, in an action on the case for deceit, the sum of fifteen hundred dollars damages.

Plaintiff's evidence tended to prove that one F. C. Harris was the general agent and manager of defendants in making the sale. That on the morning of, and just prior to, the commencement of the sale, the plaintiff informed Harris that he wished to purchase the bull in question and asked him if he was a "good breeder." That plaintiff was assured by Harris that the bull was sound and was a "good breeder." That plaintiff, on account of this representation by Harris, bought the bull. That this representation by Harris proved to be false. That on account of certain physical defects the bull was worthless for breeding purposes.

The plaintiff testified that he knew that the sale was made by the defendants as administrators. That he lived near defendants, and had known the bull since he was a calf. That one of the defendants, S. C. Palmer, was at Chicago, at the time of the sale. He said : "I told S. C. Palmer, just before those cattle were put up for auction, that the customary rule was to guarantee the pedigree and title, and that was expected. I don't remember telling him that I was older and knew more about such matters than he did." "I told him, the customary rule of short horn men, at public sale, was to guarantee the pedigree and title and *nothing else ;* but they were expected ( *sic* ) all they knew about it. This was after my talk with Harris. Defendant was not present when I talked with Harris." Plaintiff further testified "that he had no conversation with S. C. Palmer about buying the bull and he made no representations to him concerning the animal."

There was some testimony that Harris had knowledge of the defects of the bull, and that this knowledge came to him a short time before taking the cattle to

Chicago ; that at the time, Harris had charge of the cattle on farm of deceased, and was preparing them for sale at Chicago.

Defendant's evidence tended to show that the auctioneer made the announcement at the sale in the presence and hearing of plaintiff, "that the defendants were making the sale for the purpose of settling the estate, and that they had no *personal knowledge* of the cattle, world *warrant* nothing except the *title and pedigree* and that the *purchasers would have to take the cattle as they found them.*

Defendant Palmer testified : "That he knew nothing of any defects in the bull. That he had no conversation with plaintiff about the bull, and did not know that he wanted or intended to buy him. *Did not know that plaintiff had any talk with Harris about the bull before the sale.*" Just before the sale, plaintiff said to me ( Palmer ), "I am older than you. *You are selling these cattle as administrator and cannot warrant anything,* and you should have the announcement made that there was no warranty or guarantee made except as to title."

Harris denied that he told plaintiff the bull was a *sure breeder.* He told plaintiff that the bull was old, had been used as a show animal, and had been shipped a great deal on railroads. That considering these matters, that he thought the bull was a good breeder. That at the time he and plaintiff had this conversation plaintiff did not tell him that he wanted to buy the animal.

Defendants' evidence also tended to prove that the bull was sound at the time he was sold, and that neither defendants nor Harris had any knowledge of the defects claimed by plaintiff. Defendant's evidence also tended to prove that Harris was not the general agent of defendants, and had no authority from them to make any representations or guarantees concerning the cattle. That he was a son-in-law of deceased, and was hired at

fifty dollars per month to look after and care for the cattle.

The case was submitted to a jury and resulted in a verdict and judgment for plaintiff in the sum of $862.70. From this judgment defendants have appealed the case to this court and their chief complaint grows out of the instructions.

The defendants asked the court to give this instruction, which was refused, to-wit: "The court instructs the jury that there is not sufficient evidence in this case to establish any liability on part of defendants herein and the jury will return a verdict for the defendants."

We are of the opinion that this instruction ought to have been given.

The plaintiff predicates his right to recover, not for the violation of any contract of warranty made by Harris as defendants' agent, but he bases his right upon the ground that Harris, as defendants' agent, falsely represented the bull to him, and that these representations were made under such circumstances, that plaintiff had a *right* in making the purchase, to *rely* on them, and that the representations being false, that defendants *ought*, in justice, to respond to plaintiff in damages.

The right of recovery in cases like the one at bar, is not bottomed on the theory of an implied authorization of the agent by the principal, to cheat the purchaser, because the law will never presume that the fraudulent acts of an agent were authorized by the principal.

This right of action is worked out and established by a different rule, where the fraudulent conduct of the agent was unknown and unauthorized by the principal. The question in such a case is, which one of the parties ought in justice to bear the loss? If the principal and the party claiming to be defrauded are equally innocent, then the damages resulting from the fraudulent representations of the agent, must be borne by his principal, because he was the cause of the *confidence* reposed in the agent.  Story on Agency [ 9 Ed.] sec. 127.

This rule has for its foundation the principle of law that every person who authorizes another to act for him, undertakes for the absence of fraud by his agent in conducting the business, and if an innocent party is damaged by the fraudulent acts of the agent while acting within the *scope of the agency*, the principal will be liable.

In case of *Griswold v. Haven*, 25 N. Y. 599, the court decides that the liability of a principal for the fraud of an agent does not rest on the ground that the principal has in some way, either actually or apparently, authorized the fraudulent act. "The whole doctrine," says the court, "proceeds upon the intelligible grounds, that where one of two innocent parties must suffer by the act of a third person, *he* shall suffer, who has been the cause or the occasion of the *confidence* and *credit* reposed in such third person." (Citing Story, Part., sec. 108). The same doctrine is declared by Kerr in his work on fraud and mistake. The author on page 118, says: "The general interest of society demands that as between an innocent company on the one hand and an innocent individual defrauded by the company on the other, misrepresentations by the directors of the company shall bind the company although the shareholders may be ignorant of the representations and of their falsehood."

That the *defendants* are innocent and free from any complicity in the frauds of Harris, is beyond dispute. They did not know that the bull was unsound, and they had no knowledge of Harris' representations to plaintiff, and they did not authorize the representations to be made. These facts certainly constitute them innocent parties within the meaning of the law. Can this much be said of plaintiff? How is this question to be determined? The true test is. did plaintiff believe and did he have reasonable cause for the belief, that Harris, in

making the representation as to the *quality* or *usefulness* of the animal as a breeder, was acting within the scope of his agency? *Bickford v. Menier*, 107 N. Y. 494.

On the other hand, if plaintiff had reason to know that Harris, in making the representations, went outside of the scope of his agency, then plaintiff had no right to rely on what he said, and the false assertions by Harris would afford no cause of action against the defendants. Story, Agency [9 Ed.] sec. 127.

When we apply this law to the admitted facts in the case, it is quite apparent to us that plaintiff ought not maintain this action.

Plaintiff knew that defendants were administrators, and were executing, under the orders of court, a mere naked trust, having no personal interest therein. And recognizing the legal principle, that defendants could not, by any representations they might make as to the qualities of the cattle, bind the estate, but would only create a personal liability, the plaintiff advised the defendant Palmer, who was in Chicago and managing the sale, that it was not customary at such sales as that, to warrant anything but the pedigree and title, and that he ought to have this fact announced by the auctioneer. Plaintiff admits that he had this conversation with defendant Palmer just before the sale commenced, and that just prior to this conversation, he had asked Harris, in a *private way*, concerning the breeding qualities of the bull.

The uncontradicted evidence is that the auctioneer, in the presence and hearing of plaintiff, announced that defendants were selling the cattle as administrators, under an order of court; *that they knew nothing personally* about the *qualities* of the cattle offered for sale, and that they would not guarantee *anything* except the title and pedigree. In the face of this testimony, how can plaintiff claim, that he had good reason to believe

that when Harris undertook to represent to him the *qualities* of the bull, that he (plaintiff) had a right to rely on the statements as coming from defendants through their agent Harris? Can it be said that plaintiff is an *innocent* and *injured* party, when he advised the defendant Palmer, that he ought not to warrant anything concerning the cattle except the title and pedigree; that it was not customary at such sales to do more? And ought plaintiff be permitted to recover in this action when it was distinctly announced by the auctioneer in his hearing, that defendant had *no personal knowledge* of the qualities of the animal to be sold and that the *purchasers would buy at their peril* except as to title and pedigree? We think not.

The judgment in this case is not only inequitable and unjust, but to let it stand would violate the just rule of law governing such cases. The fact that plaintiff told defendant Palmer (which Palmer denies), that he was expected to tell all he knew about the cattle, does not help plaintiffs case for two reasons: *First.* Plaintiff does not complain of any fraudulent concealments by Palmer. *Second.* There is no evidence that Palmer knew that that the bull was worthless as a breeder. We cannot see upon what possible theory plaintiff can or ought to maintain this action. The judgment in the case will therefore be reversed and the cause dismissed. All the judges concur.

BIGGS, J., on motion for rehearing.

The original opinion in this case fully recognizes the civil liability (under certain circumstances) of a principal for the false representations of an agent, whereby an innocent third party has been misled to his damage; and in a proper case it would make no difference whether the principal authorized or had knowledge of the fraudulent conduct of the agent or not. But to hold that the bare fact, that the representations were made by the agent and that they proved to be false, is sufficient to fix the liability of a principal under any

and all circumstances would be a "monstrous" doctrine. Such a cause of action is not complete unless the evidence shows that the party complaining, not only acted on the false representations to his damage, but that under the circumstances he did believe, and *had a right to believe*, that the agent had authority from his principal to make the representations.

If such a case is made out then the *innocent* principal, although he had no knowledge of, and did not authorize, the statements to be made, must answer to the party damaged. This liability of an innocent principal is worked out upon equitable principles, such as govern estoppels *in pais*. In fact it may be well said that the principal is estopped to deny that his agent had no authority to make the representations, for the reason that it would be a fraud as to the party injured. We have been unable to find any adjudicated case that places the principal's liability under such circumstances on different grounds. In the motion for rehearing, we have been referred to *Garretzen v. Duenckel*, 50 Mo. 107 ; *Snyder v. Railroad*, 60 Mo. 416, and *Harriman v. Stowe*, 57 Mo. 98.

These cases were for personal injuries received on account of the alleged negligent acts of the agents or servants of the defendants. These cases merely announce the general rule that a principal is civilly liable for the negligent acts or fraudulent misrepresentations of an agent in the prosecution of the principal's business. But the cases are not analogous to this, and the law, as therein declared, we have no disposition to question.

Our attention is also called to *Bank v. Hoeber*, 88 Mo. 43, and counsel for plaintiff insists that the original opinion in this case is not in harmony with the law of that case. We will briefly refer to the facts in *Bank v. Hoeber*. The Bank of Commerce was a creditor of Hoeber, and the latter appointed Mr. Dickson, his

attorney and agent to procure a settlement with his creditors. A composition paper was prepared which was signed by all of Hoeber's creditors. One firm refused to sign and Dickson agreed (individually) to pay them something additional, to sign the paper. Hoeber knew nothing of this. Dickson induced the Bank of Commerce to agree to the settlement and concealed from the bank the secret arrangement he had made with the other creditor. In the suit by the bank to cancel the agreement, the court very properly held that the fraudulent *concealment* by Dickson avoided the composition agreement, and that Hoeber must bear the consequences of the fraudulent acts of his agent, although he did not authorize them and had no knowledge of the fact that his agent had given one creditor more than another. The decision is strictly placed on the ground of want of knowledge by the bank.

If the officers of the bank had knowledge of facts that would have induced a reasonable and prudent man to think or suspect that Dickson had given the preference, and nevertheless it signed the agreement, then the result of the case would have been quite different.

The non-liability of defendants in this case, as determined in the original opinion, was not based on the theory of want of knowledge by defendants of defects in the bull, and in this the learned counsel for plaintiff have been misled. We distinctly stated " that under the admitted facts the plaintiff had no right or reason to believe that Harris had authority to make representations for defendants as to the qualities of the bull ; but on the contrary, he had every reason to convince a prudent man that Harris had *no such right*. That this was a necessary element in plaintiff's case, and having failed in this, he could not recover." We have gone through the record again, and have no reason to change our mind as to the facts. It is an undisputed fact that the announcement was made by the auctioneer in the presence and hearing of plaintiff,

that the defendant knew nothing personally about the qualities of the animals to be sold, that they would *warrant nothing* but the *pedigree* and *title* and that the *purchasers would have to take the cattle as they found them.* If plaintiff had honestly believed before this announcement was made, that he had a right to rely on Harris' statement as coming from defendants, this statement publicly made by the auctioneer, as the representative of defendants, ought to have disabused his mind; or at least induced him to have then and there inquired of S. C. Palmer, his neighbor, whether Harris had any authority to bind him personally by representations contrary to the public announcement of the auctioneer.

Plaintiff cannot avoid the force of this argument upon the theory that defendants had advertised Harris as the manager of the sale, because he knew that defendant S. C. Palmer was at the sale, and he recognized that Palmer was the real manager, because he advised with him just before the sale commenced as to the manner of conducting the sale, and what announcement ought to be made by the auctioneer. Under such circumstances, the plaintiff cannot claim that he bought the bull on account of any representations of Harris as the agent of defendants or that he honestly believed that Harris had a right to represent the qualities of the bull.

Plaintiff urges that the cause ought to be remanded, so that the question of defendants' knowledge of the condition of the animal may be tried. This ought not be done for two reasons:

*First.* The defendants' liability, as shown by plaintiff's evidence and instruction, was placed on the sole ground of false representations by Harris. When a case is tried on a particular theory in the trial court it must be reviewed by the appellate court on the same theory. *Nance v. Metcalf,* 19 Mo. App. 183; *Schlicker v. Gordon,* 19 Mo. App. 479; *Corn v. City of Cameron,* 19 Mo. App. 573; *Wright v. Sanderson,* 20 Mo. App. 534; *Fell v. Mining Co.,* 23 Mo. App. 216.

*Second.* Although defendant, S. C. Palmer, did know that the bull was not a good breeder, yet we cannot perceive upon what principle the defendants could be held in this action. Plaintiff admits that he did not talk with Palmer about the bull, and does not pretend that Palmer knew that he intended to bid on the animal. How then can it be said that defendants were guilty of any such fraudulent concealments touching the qualities of the bull, as would afford plaintiff a right of action at law for damages?

But we do not think there is any substantial testimony in the case that S. C. Palmer knew that the bull was unsound. He positively swears that he had no such knowledge, and the only testimony, tending in any way to show the contrary, was developed on the cross-examination of one of the plaintiff's witnesses. This witness said that he knew of the defects of the bull and that "he told S. C. Palmer how the bull acted." But it does not appear *when* he told Palmer. It might have been after the sale.

To hold defendants individually liable to plaintiff for the defects of this animal sold by them as administrators, it must appear that they were either guilty of some positive fraud themselves in making the sale, or that the circumstances were such that they ought in justice to be held responsible for the misfeasance of their agent. The evidence fails to show either.

The motion for rehearing will be denied.

### SEPARATE CONCURRING OPINION.

THOMPSON, J.—My mind has wavered somewhat upon this case, but it has always come back to the same starting point, and that is this: In order to hold a person for damages in an action of tort for a misrepresentation made by his agent in effecting a sale or other contract for him, one of four things must occur: Either (1) he must have authorized the agent to make the

particular representation ; or (2) he must have authorized him to make representations generally respecting the subject-matter of the sale or contract; or (3) he must have held him out as so authorized ; or (4) in any of these cases he must have ratified his fraud after it was committed. None of these grounds of liability exist in the present case, and it is only upon the *third* ground that the attempt is made to charge these defendants. But this third ground fails equally with the others, for the following reasons. This was not a sale by these defendants of *their own* cattle, but it was an *administrator's* sale. There is no implied warranty at such a sale, but the implication or presumption of law is that the sale takes place subject to the rule of *caveat emptor :* That the purchaser must look out as to the quality of the thing which he buys. When, therefore, a man bids at such a sale, he knows that in respect of the quality of the chattel he is buying he takes his own risk and proceeds upon his own judgment. In the absence of some evidence to the contrary he has no right to suppose that an agent of the administrator is authorized to bind the administrator by warranting anything or representing anything, because he knows that at such a sale the administrator does not warrant anything or represent anything. It cannot, therefore, be said that, from the mere fact of allowing a subordinate employe,—a mere herdsman,—to get out and circulate a hand-bill advertising himself as manager of the sale, the administrator holds him out to those who know that it is an administrator's sale, as authorized to make any representations touching the subject-matter of the sale which will bind the administrator personally. The case is entirely different from the case where a man sends an agent out to manage a sale for himself personally, or where he puts a salesman behind a counter to sell his own goods.

The question, then, is whether there were any circumstances attending this sale which repelled the presumption of law above stated and authorized the inference on the part of any of the attending buyers— or more especially on the part of this plaintiff—that Harris was authorized to represent anything in respect of the quality of the cattle. Not only are there no such circumstances, but all the circumstances strengthen the presumption that there was no such authorization and no such holding out as entitled the plaintiff to regard any representation made as being the representation of these defendants,—either as coming from them directly or as representations for which they would be responsible in law. The fact that he advised one of the defendants not to warrant anything beyond title and pedigree, and that such was the distinct announcement of the auctioneer and the condition under which he bid, entirely negatives the conclusion that he could have acted upon the representations of Harris in making the purchase with the conception that they were the representations of the defendants. He may have an action against Harris personally ; I do not think it necessary to discuss that. But, for the reasons which I have stated, it seems to me that the rule of *respondeat superior* does not exist in this case—that the chain of connection between the principal and agent—which identifies their acts and charges the former with responsibility for the acts of the latter, is in this case entirely broken, or, rather, never existed.

I am not prepared to say that I disapprove of any of the language of my brother BIGGS in either of the opinions which he has delivered ; but as my mind has drifted in a somewhat different channel, I have thought it proper to state my particular reasons for concurring in the decision.