A. B. CRAWFORD *et al.*, Plaintiffs; AMERICAN NATIONAL
BANK, Appellant and Respondent, v. BOSTON STORE
MERCANTILE COMPANY *et al.*, Defendants; SWOF-
FORD BROTHERS DRY GOODS COMPANY, Respondent
and Appellant.

### St. Louis Court of Appeals, May 19, 1896.

National Banks: POWERS OF CASHIER. The cashier of a national bank
has no apparent or implied authority by virtue of the position he holds
to make a representation on behalf of the bank as to the solvency of
one of its debtors. Accordingly, the bank will not, in the absence of
evidence of authorization, be bound or estopped by such a represen-
tation made by him in reply to an inquiry on the subject.

*Appeal from the Greene Circuit Court.*—HON. JAMES T.
NEVILLE, Judge.

REVERSED AND REMANDED (*with directions*); BIGGS, J.,
dissenting.

*Goode & Cravens* for plaintiff, American National
Bank.

*Ellis & Cook* for defendant, Swofford Brothers Dry
Goods Company.

BOND, J.—This is a creditor's bill brought by
plaintiffs against the Boston Store Mercantile Company,
an insolvent corporation, seeking an appropriation of
its assets to the payment of its debts, including a bal-
ance of $7,300 due the plaintiffs on the notes of defend-
ant. An injunction was issued, and a receiver
appointed to wind up the affairs of defendant accord-
ing to the prayer of the petition. The Swofford Broth-
ers Dry Goods Company, a corporation, was made

defendant on its motion, and during the progress of
the cause filed an amended cross petition setting up a
demand against the defendant for $1,957.67 for goods
sold upon the alleged fraudulent representations of the
plaintiff bank and its cashier, wherefore it prayed that
said plaintiff should be debarred from any share of the
funds in the hands of the court or its receiver, until the
payment in full of said sum. Plaintiff replied by a
general denial. When these issues were formed, the
report of the referee and receiver showed that the assets
had been converted into money at the sum of $5,500,
and that the demands allowed against the insolvent
corporation aggregated $15,654.89; that twenty-eight
per cent of said demands had been paid to the various
holders, except that nothing had been paid to plaintiff
or the Swofford Brothers Dry Goods Company. Where-
upon, these two creditors filed a stipulation authorizing
the receiver to pay to the one $525, and to the other
$800 of their respective demands out of the funds in
his hands, and to retain the balance until the termina-
tion of the contest between them, such payment to be
without prejudice to either party. Thereupon, the case
was tried by the court, and the Swofford Brothers Dry
Goods Company adduced evidence showing that plain-
tiff held the note of one Lena Silberberg for $5,000
secured by chattel mortgage on her interest in a stock
of goods; that plaintiff caused said mortgage to be
foreclosed and became the purchaser of the property
embraced therein for $4,800; that on the twenty-sev-
enth of July, 1893, plaintiff resold said property to the
defendant, the Boston Store Mercantile Company, for
the consideration of $1,100 in cash and the note of said
purchaser for $3,700, and its guaranty of the $5,000
note formerly held by plaintiff against said Lena Sil-
berberg. The Boston Store Mercantile Company, all
of whose shares of stock except two were owned by said

Lena Silberberg, executed a written agreement signed by its stockholders and directors pledging plaintiff $13,000 of its capital stock to secure said indebtedness, and agreeing that two of its directors should resign and plaintiff's cashier and E. T. Crawford should be elected in their stead, a share of stock being given to each to qualify them for said positions, and that said E. T. Crawford should become secretary and treasurer, and should deposit the receipts of the corporation in the bank of plaintiff. This agreement was carried out, and the Boston Store Mercantile Company did business as a merchant until February 17, 1894, during which time it paid on plaintiff's demand the sum of $1,400.

The evidence shows that the $15,000 for which the Boston Store Mercantile Company was incorporated was not paid in money at any time, and that the assets of the corporation, when it began business, consisted of the stock of goods purchased by it of plaintiff. At the time it began business the husband of Lena Silberberg made certain representations as to the assets and liabilities of the corporation to Dunn's agency, which were untrue. The cashier of plaintiff, when applied to by a representative of said agency, corroborated the statements of Silberberg. Soon thereafter Swofford Brothers Dry Goods Company received an order for goods from the Boston Store Mercantile Company. In addition to making other inquiries as to the solvency of the latter, the following letter was written to, and the following reply received from, plaintiff's cashier:

"KANSAS CITY, MO., 8–31, 1893.

"*A. B. Crawford, Cashier American National Bank, Springfield, Mo.:*

"DEAR SIR:—We are in receipt of an order through our salesman in your section for the Boston Store Mercantile Company. In making some inquiries

regarding this concern before opening the account, we learn that you are a stockholder there; hence this letter to you. The information which we have received indirectly is not very complete or satisfactory, and we write to know something from you regarding the concern, and to know if the stockholders will individually guarantee any accounts made by the company.

"Hoping that we may have an early reply to our letter, and that it may result in our being able to do business together, we are,

"Yours truly,

"SWOFFORD BROTHERS DRY GOODS COM'Y."

"GENTS:—Replying to the above, will say that this company are good for, and will pay for, all they buy. I will not guarantee bills bought by them, but think you are safe in selling them.

"Truly,

"9-4, 1893.           A. B. CRAWFORD, Cas."

With reference to the inducement to fill said order and sell other goods to the purchaser, the Swofford Brothers introduced their credit man, who testified on cross-examination, to wit:

"Q. Now, do you mean to swear that you relied on these five lines you received from Mr. Crawford in filling this order, and did not rely on the statement of Dunn or the other information you had gathered in other quarters? A. I do.

"Q. You relied exclusively on that, did you? A. Yes, sir."

Upon further proof of the insolvency of plaintiff and its cashier, the trial court rendered a decree adjudging that Swofford Brothers Dry Goods Company should receive enough out of the funds in the hands of the receiver to give them a just proportion of the entire proceeds collected by said receiver upon an equal application thereof to the claims of all the creditors, except

the plaintiff. The court further adjudged that, if anything remained, it should go to the plaintiff, inasmuch as the other creditors had not put themselves in a position to claim what was left in the hands of the receiver after the payment of the twenty-eight per cent as above stated. Both parties appealed from this decree.

The evidence given by Swofford Brothers Dry Goods Company shows that its sales of goods to the defendant were made exclusively upon the representations contained in the reply to its letter of inquiry made by plaintiff's cashier. Hence it is evident that, to preclude plaintiff from the assertion of its equitable right to share with other creditors in the assets of the common insolvent debtor, it must appear that the matter contained in the reply of its cashier contained the elements of fraudulent representation or estoppel, and that it was written by the express or implied authority of plaintiff or was subsequently ratified. This is the rule which governs the liability of principals for such acts on the part of their agents. Mechem on Agency, sec. 743; *Brauckman v. Leighton*, 60 Mo. App. 41; *Richardson v. Palmer*, 36 Mo. App. 103; *Gillett v. Railroad*, 55 Mo. 315. Nor is the rule any wise different, when the principal is a national bank and the agent is its cashier. *Merchants National Bank v. Armstrong*, 65 Fed. Rep. 932; 1 Morse on Banking, sec. 167 (f); *Horrigan v. First National Bank*, 10 Chicago Legal News (Tenn.), 112; *Mapes v. Second National Bank of Titusville*, 80 Pa. 163; *Swift v. Jewsbury*, 1 Central Law Journal, 160.

It is not contended that plaintiff directly authorized the reply of its cashier to the letter in question, nor that it knew of or ratified this act. Unless, therefore, it was within the apparent scope of the authority of the writer, it can not bind the plaintiff. The duties of the cashier of a bank, as commonly understood, do

not warrant representations on his part as to the solvency or credit of business corporations who are indebted to the bank.    His powers are strictly executive and ministerial.    He is the agent of the board of directors.    "It is his duty to carry out what they devise. They are responsible for the soundness of the action resolved upon; he is responsible for the honesty, accuracy, regularity and skill, with which that action is carried out.    They are the mind, and he is the hands of the corporation."    Morse on Banking, sec. 152; *Ibid*, sec. 167 (f).    There is not a particle of evidence in the present record that his authority was enlarged beyond its natural scope as cashier, or that he was held out as having such greater authority by the plaintiff.    Neither was there any evidence that plaintiff adopted his act in replying to the letter of Swofford Brothers Dry Goods Company.    Under the imperative rules of law he did not therefore bind the plaintiff by such reply, even if its unveracity and fraudulent character be conceded.    This conclusion necessitates the modification of so much of the decree of the trial court as debarred plaintiff from sharing equally with all creditors in the assets administered in this proceeding. To that end the decree will be reversed and the cause remanded, with directions to enter a decree in conformity with this opinion.    Judge ROMBAUER concurs; Judge BIGGS dissents.