**BANK OF QUAPAW v. FLINT et al.**

No. 14714—Opinion Filed Feb. 12, 1924.

1 **Banks and Banking—Duties of Officers —Statutes.**

The affairs and business of a state banking corporation, under section 262, Rev. Law 1910, are managed and controlled by its board of directors. The statutes provide for the selection and qualification of the president and cashier but do not prescribe their respective duties; in the absence of specific delegation these officers only have such authority as is inherent in the respective office itself.

2. **Same—Nonliability of Bank for Misrepresentation of Cashier in Sale of Mining Property.**

A state banking corporation is not bound by statements made concerning the value of stock offered for sale and the property of certain mining properties by its cashier, or other managing officer, in which the bank has no interest and receives no benefits from the transaction.

3. **Same—Defense to Note Given to Bank to Secure Purchase Price.**

Where persons are induced to purchase stock of a mining company by false and fraudulent statements made by the cashier of a bank who is personally interested in the mining company and from which bank the parties secure a loan with which the stock is paid for, the bank is not bound by the statements of its cashier concerning the value of the mining stock, nor can the makers of the note successfully plead same as a defense to the payment against the bank, unless it can be shown that the bank received some benefits from the transaction other than a legal rate of interest, and thereby adopted or ratified the act of its cashier.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by the Bank of Quapaw against Chas. W. Flint and Roy Lundy. Judgment for defendants and plaintiff appeals. Reversed and remanded.

Hulette F. Aby, William F. Tucker, and Frank Settle, for plaintiff in error.

Poe & Lundy, J. E. Curran and R. E. Morgan, for defendants in error.

Opinion by JONES, C. This suit was instituted in the district court of Tulsa county, Okla., on May 9, 1921, by the Bank of Quapaw, a corporation, plaintiff, against Charles W. Flint and Roy Lundy, defendants, for the recovery of $750 together with interest and attorney's fee, as evidenced by a certain promissory note bearing date of October 1, 1920, executed by the defendants. To the petition of plaintiff defendants filed joint and several answers and cross-petitions to which pleadings the plaintiff filed a motion to separately state their cause of action under the cross-petition which was sustained by the court, and thereafter the defendants filed their amended joint and several answers and cross-petitions in which they admit the execution of the note sued upon, but deny any liability thereon, and aver that the note sued upon grew out of and is a part of a transaction between these defendants and the plaintiff Bank of Quapaw, wherein they executed their notes for $2,000 in payment of mining stock; and that said note sued upon was executed by these defendants as a renewal for balance due on the original note of $2,000 given in payment of certain stock in the Quapaw Pumping & Royalty Company, and further answering, the defendants say that about October 1, 1919, S. J. Chambers was president of the Bank of Quapaw, plaintiff herein, and that C. S. Douthat was cashier or assistant cashier of said bank, and that the said Chambers and Douthat were the active managers of said bank in full charge of its operations, and that on the same date the said Chambers was vice-president of the Quapaw Pumping & Royalty Company, and that said Douthat was secretary thereof, and that Chambers and Douthat were on the board of directors of said bank, plaintiff herein, and on the board of directors of the Quapaw Pumping & Royalty Company, and had full knowledge of the condition and affairs of both the bank and Quapaw Pumping & Royalty Company, and that on or about said date of October 1, 1919, the said Chambers represented to these defendants that the Quapaw Pumping & Royalty Company was a solvent, going concern, that it was the owner of royalties on many producing zinc mining properties in the Quapaw field, and represented that he was selling capital stock of said mining company for the purpose of obtaining more capital for the use of said company in further developing its properties, and the said Chambers represented the said mining company to be sound financially, and pointed out specific mining properties which he represented to be paying royalties, and as belonging to said mining company. Defendants further aver that the representations so made by the said Chambers were false, fraudulent, and untrue, that Chambers knew the same to be

false and untrue at the time they were made, and that he made same with the intent to deceive defendants and that the defendants relied thereon, and were induced to purchase stock in said mining company, that the defendants were deceived thereby and did rely thereon in purchasing said stock, and purchased stock in said company to the extent of $2,000 for which they gave their joint notes to the Bank of Quapaw, and thereafter paid the sum of $1,250 on said notes and the interest thereon, and the $750 note sued on was given as a renewal and for the balance due on said original notes, amounting to $2,000, that said payment of $1,250 was made by the defendants before they were advised or knew of the insolvent condition of the said mining company, and without knowledge of the fact that the stock purchased by them was worthless at the time they purchased it, and has been at all times since. That at the time said representations were made said mining company was in fact insolvent and owed large sums of money to the Bank of Quapaw, both by overdraft and unsecured notes, and that the real purpose of selling said stock was to apply the proceeds derived from the sale to the indebtedness of said mining company due and owing said bank.

Defendants further say that the Bank of Quapaw knew of the condition of the mining company through its said officers, Chambers and Douthat, who were also officers of the mining company, and that it accepted and used the $1,250 paid by these defendants on the original note of $2,000. And further aver that the stock sold them by the said Chambers and Douthat is now and was utterly worthless at all times heretofore mentioned, and that these defendants have been damaged in the sum of $1,337.11, being the $1,250 paid by the defendants together with interest thereon to October 15, 1920, for which amount they pray judgment. To which answer and cross-petition the plaintiff filed its reply and denied all the matters set up as a defense to plaintiff's cause of action on the note sued upon, and specifically denied the averments of the cross-petition of false and fraudulent representation in the procurement of the original notes of $2,000 and in the sale of the stock of said mining company; and specially denied that the bank held any past due papers, overdrafts, or unsecured notes of the mining company. And allege that the defendants and each of them purchased the stock in question of their own volition and on their own judgment after they had made personal investigation of the facts and conditions; that they were interested in other mining properties in the district in which the said Quapaw Pumping & Royalty Company operated, and that they acted of their own free will and accord in making said investment, and specifically deny that the bank profited in any way by reason of the sale of said stock or that said mining company was indebted to said bank by overdraft or otherwise as alleged in defendants' cross-petition, and ask that the defendants take nothing by reason of their cross-petition and that it have judgment as originally prayed for. Upon the issues thus joined the cause was submitted to a jury which returned a verdict in favor of the defendants for $1,337.11, with interest thereon at the rate of six per cent. from October 15, 1920, to which verdict of the jury the plaintiff filed a motion for a new trial, which was overruled, and from the order of the court and judgment rendered on the verdict, the plaintiff appeals. The plaintiff in error assigned numerous specifications of error, but the question of whether or not the plaintiff bank was bound by the acts and conduct and declarations of Chambers, its cashier, and second, whether or not the representations alleged to have been made are such representations as would authorize the defendants to defeat the payment of the $750 note sued on and recover judgment for the amount theretofore paid on said original note of $2,000 are the questions which must control the rights of the parties in this case. The facts, as we gather them from the record, disclose that S. J. Chambers at the time of the transaction complained of was cashier of the Bank of Quapaw and that Mr. Douthat who seems to have been connected with the sale of the mining stock to the appellees, Flint and Lundy, had no connection with the bank and while there is a conflict of evidence as to the statement made by Chambers relative to the value of the mining stock the jury in passing upon the matter evidently found that he made statements that were not warranted relative to the value of the property of the Quapaw Mining & Pumping Company; however, the proof was in no wise satisfactory on this point.

The character of the property was such as to render a statement made concerning its value largely speculative, and whether or not its value would increase or depreciate materially was necessarily to be determined by future operations; however, for the purpose of this opinion, we are accepting the verdict of the jury on this question.

Appellant first contends that the Bank of Quapaw having no interest in the Quapaw Mining & Pumping Company and having no interest in the sale of the stock of said company, any statement made by its cashier, Chambers, relative to the value of the stock or of the property of said mining company was clearly without his duties as cashier of the bank, and cited section 262, Rev. Laws 1910 (sec. 4119, Comp. Stat. 1921), and the cases of Farmers State Guaranty Bank v. Cromwell, 70 Oklahoma, 175 Pac. 826; Wilkin Hale v. Herstein, 48 Okla. 268, 149 Pac. 1109; Crawford v. Boston Store Mercantile Co., 67 Mo. App. 39, and Western National Bank of New York v. Armstrong, 38 U. S. (Law Ed.) 470, in support of this contention and calls special attention to the case of Farmers State Guaranty Bank v. Cromwell, supra, in which case the bank sued to recover on a promissory note, the defense was failure of consideration and fraud and deceit by the bank, in that the note represented the purchase price of certain shares of capital stock of plaintiff bank, which the defendant had purchased from a third party, but before purchasing had been advised by the cashier of plaintiff bank and president that the stock was valuable when as a matter of fact it was at the time worthless, as it afterwards proved to be, and that the defendant was misled by the advice falsely and fraudulently given; the defendant obtained a verdict in the trial court from which the bank appealed; the Supreme Court of the state of Oklahoma reversed the judgment, mainly if not entirely upon the grounds that the court should have sustained the motion for a directed verdict.

This case, we think, was governed largely by the same principles of law that should govern the instant case. In the case cited the court said:

"* * * It is no part of the duty of the bank cashier to pass out gratuitously or otherwise to prospective purchasers of stock in the bank information as to the financial standing of the bank or to advise as to the value of its stock. * * *"

The record does not show that either the cashier or president was authorized to make representations of this kind or character, or that the board of directors had any knowledge that they had made such representations, and for that reason there can be no grounds for the contentions that the wrongful acts of the officers had been ratified by the directors. and calls attention to section 262, Rev. Laws 1910 (4119, Comp. Stat. 1921), which reads as follows:

"The affairs and business of any banking association organized under the laws of this state shall be managed and controlled by a board of directors of not less than three or more than thirteen in number who shall be selected from the stockholders, at such time and in such manner as may be provided by the by-laws of the association. * * * The board shall select from among their number the president and secretary, and shall select from among their stockholders a cashier. Such officers shall hold their offices for a term of one year and until their successors are elected and qualified. The board shall require the cashier and any and all officers having the care of the funds of the bank to give a good and sufficient bond, to be approved by them, and held by the state banking board. The board of directors shall hold at least two regular meetings each year, and at such meetings a thorough examination of the books, records, funds and securities held by the bank shall be made and recorded in detail upon its record book and a certified copy thereof shall be forwarded to the bank commissioner and to each stockholder of record within ten days."

It is true in the instant case appellees in their answer and cross-petition in the trial court allege that the Quapaw Mining & Pumping Company was indebted to the Bank of Quapaw, and that the bank held overdrafts and unsecured notes of said company at the time this transaction occurred. Had the proofs sustained these allegations and have shown conclusively that the bank did in fact receive the benefits of the money loaned to the appellees then the contention of the appellees might be worthy of more serious consideration, but in view of the fact that the cashier, Chambers, was clearly acting outside the scope of his authority in making the representations if in fact he did make them and the failure of the proof to establish the fact that the bank derived any benefit from the transaction, other than the legal rate of interest, we are inclined to the opinion that the authorities heretofore cited are controlling in this case. The appellees cited many authorities in support of their various contentions and make a very ingenious argument in connection with excerpts taken from the case of People's Bank v. National Bank, 131 U. S. 183, wherein they call attention to the fact that if their note, referring to the note sued on in this case, and the original note for which it was given as a renewal for the balance due, had been made payable to the mining company and their execution had been induced by false representations and the notes had been transferred to the bank, the makers of the notes could have defeated recovery by the

bank by showing that the bank through its cashier had knowledge of the fraudulent representation made to induce the giving of the notes; and then they submit the question, can it be said that the bank is in a better position with its cashier participating in the fraud and taking the notes direct to the bank, than it would have been had it not participated in the fraud, but had only had knowledge of the fraud through its cashier? The premise upon which this argument is based states a correct rule of law and is supported by many authorities, and has recently been upheld by this court in the case of Bank of Meno v. F. A. Coulter, 94 Okla. 213, 221 Pac. 495, but the distinction as we see it and as we understand the authorities in this: that in one instance the officer of the bank is acting within his proper sphere and in the interest of the bank, and in such case the bank is bound by his acts; in the other case, he is acting without the scope of his authority as an officer of the bank and in his own individual interest, or in the interest of others, and not in the interest of the bank. The purchase of negotiable paper by the cashier or managing officer of a bank is such an act as comes within the scope of his authority and duty as cashier, or other officer, of such bank, while representatives and statements as to the value of the stock of a mining company such as were made in making the the sale or assisting or aiding in making the sale of the stock of the mining corporation was clearly outside of his authority and duty as cashier of the bank and hence the bank is not bound by such statement and transaction, while on the other hand, assuming that the notes had been procured by fraudulent representation, and taken in the name of the Quapaw Mining & Pumping Company and sold to the bank whose cashier had full knowledge of the fraud perpetrated, then the bank would have been bound by the act and knowledge of its cashier, and would not be in the attitude of an innocent purchaser of said notes for the reason that the cashier would have been acting within the scope of his authority as such, and in the discharge of his duty in the interest of the bank, when purchasing notes for the bank. Both appellant and appellees call attention to many other authorities and discuss numerous principles, but they all revert back to the one question, of whether or not the bank is bound by the acts of its cashier in this particular transaction, but we think the questions discussed are decisive of the rights of the parties in this case and we think in view of the same that it was error on the part of the trial court to refuse the motion for instructed verdict, and we therefore recommend that the judgment be

reversed and remanded to the lower court for a new trial.

By the Court: It is so ordered.