MILES R. MARTIN, JR., Respondent, *v.* GOTHAM NATIONAL BANK OF NEW YORK and Others, Appellants, Impleaded with PATRICK J. O'SHEA and Another, Defendants.

Second Department, May 13, 1927.

Banks and banking — action to rescind transaction on ground of fraud and to recover damages — individual appellants were respectively assistant vice-president and special representative of defendant bank — said appellants were interested in construction company that was customer of bank and knew that it was financially irresponsible — construction company owed bank past due note secured by chattel mortgage on property that did not exist — assistant vice-president, one of appellants, advised plaintiff, stranger in city of New York to loan money to construction company — loan was made and note of construction company to bank was paid — evidence establishes that appellants who had authority to collect notes and other obligations for bank committed fraud upon plaintiff — bank is liable for acts of its agents in collecting note and is responsible for fraud committed on plaintiff — bank can be held liable also on theory of unjust enrichment — this action was properly brought in equity to set aside transactions — unnecessary for plaintiff first to recover judgment against insolvent construction company — no defense by bank that plaintiff failed on trial to offer to return notes — rule that principal is not bound by acts of agent resulting in personal advantage is not applicable.

The plaintiff, a stranger in New York city, went to the defendant bank for advice as to investments. The individual appellants, who were respectively assistant vice-president and special representative of the defendant bank with authority to collect notes and other obligations held by the bank, were financially interested in a construction company which was a customer of the bank. They advised the plaintiff to loan money to the construction company which, at the time, was hopelessly insolvent and known to be so by the individual appellants. From the amount so loaned to the construction company, a note of the construction company held by the bank, which was past due, was paid and the bank transferred to the plaintiff the note and a chattel mortgage given as security on

property which did not exist. Thereafter the construction company executed its note to the plaintiff for the full amount of the loan and executed a chattel mortgage covering the same non-existing property, and the plaintiff surrendered the note which had been held by the bank and a chattel mortgage given to secure it, to one of the individual appellants. The evidence sustained the finding that the plaintiff was grossly deceived by the individual defendants and that a fraud was committed by them upon him.

The bank may be held liable for the acts of the individual appellants, since they had authority to collect obligations, and in the transaction involved here they did, through their fraudulent representations, induce the plaintiff to loan money to the construction company from which the bank received payment of the note held by it against the construction company.

Furthermore, the bank may be held liable upon the theory of unjust enrichment for it not only benefited by the payment of the note held by it given by the insolvent construction company, but it made a transfer directly to the plaintiff of its chattel mortgage as security for the first advance of money made by the plaintiff to the construction company; in fact, the bank sold its chattel mortgage to the plaintiff.

The plaintiff had the right to bring this action in equity to set aside the transaction on the ground of fraud and for damages suffered through the fraud of the bank's agents, for it appears that the bank had a direct connection with the transaction in that it assigned the chattel mortgage held by it as security for the note given to it by the construction company. The court had the power in conjunction with the equitable relief demanded to render a judgment against the bank for the damage sustained by the plaintiff as the result of the fraud of the bank's servants.

The construction company being hopelessly insolvent, it was not necessary for the plaintiff to procure judgment against it before it could recover from the defendants.

The contention that the plaintiff cannot recover because he failed on the trial to offer to return to defendant construction company its note cannot be sustained, since the defendant bank cannot complain that the rights of the construction company have not been conserved. Moreover, the decision provides that the plaintiff must surrender the note and the chattel mortgage upon the payment of the judgment. The failure to include that provision in the judgment may be cured.

Likewise the contention by the defendant bank that the plaintiff did not offer to return the note given by the construction company to the bank and the chattel mortgage which was given as security therefor is without force, since it appears that both were surrendered to the individual appellants as a part of the fraudulent transaction.

The rule that the principal is not bound by the acts of its agents for their personal advantage is not applicable, since in this case the agents were not only acting for their own personal advantage but were acting in the interest and for the benefit of the defendant bank.

KAPPER, J., dissents in part.

APPEAL by the defendants, Gotham National Bank of New York and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 24th day of November, 1925, upon the decision of the court rendered after a trial at the Kings Special Term.

*Louis S. Posner* [*Copal Mintz* and *Lyle Evans Mahan* with him on the brief], for the appellant Gotham National Bank.

*George Gordon Battle* [*Ludlow S. Fowler* with him on the brief], for the respondent.

LAZANSKY, J. Defendant Banning was an assistant vice-president. and defendant Lockwood a special representative of defendant bank. Each of them had been authorized, from time to time, to collect notes and other obligations held by the bank. One of the bank's customers was a contracting company of New York named Montville Construction Company, of which defendant O'Shea was president, and in which Banning and Lockwood were financially interested. In April, 1923, the construction company was indebted to the bank in the sum of $2,450, evidenced by a past-due and protested promissory note secured by a chattel mortgage on certain equipment stated therein to be located in Long Island City, but which in fact did not exist. In that month plaintiff, a stranger in New York city, little experienced in financial affairs, although understanding oil well development in the west, but having no knowledge of the general construction and contracting business, came to the bank to see Banning, to whom he had been referred by a friend, for the purpose of seeking an investment. He found Banning under circumstances which indicated authority and advised him that he was looking for an investment and would rely upon the bank in procuring one for him. It will be unnecessary to go into all of the details of the transaction which followed. Those now to be stated will suffice. Through the representations of Banning and Lockwood, plaintiff agreed to loan to the construction company $15,000 for ninety days, on its promissory note secured by stock of the company and a chattel mortgage on the equipment alleged to be in Long Island City. It was understood by plaintiff that the note held by the bank and other indebtedness of the construction company were to be paid out of the loan made by plaintiff, and that the chattel mortgage held by the bank was to be satisfied. Plaintiff was to have a share in the interest which Lockwood, who was treasurer of the construction company, held in the profits thereof. Plaintiff was to be employed by the construction company as assistant to the president at $100 a week for three months, and then at $150 for the balance of the year. The first advance made by plaintiff was for $10,047.50. This sum was obtained by the delivery by plaintiff to Banning of securities, which were sold by the bank. Banning delivered to plaintiff a cashier's check for the amount stated. The cashier's check for $10,047.50 to the order of plaintiff was indorsed

Second Department, May, 1927.     [Vol. 220

by him and cashed at the bank, and the bank received the amount of the $2,450 note of the construction company. Because of the absence of O'Shea at the time the transaction was to be closed, instead of consummating it as arranged, a note for $10,047.50 was executed by Banning and Lockwood, and the chattel mortgage held by the bank was assigned and the $2,450 note given to plaintiff as security therefor. It seems to have been intended to keep the note and chattel mortgage obligations alive until the new note for $15,000 and a chattel mortgage were given by the construction company. Later, the balance of the $15,000 was advanced. The chattel mortgage and the $2,450 note, which had been transferred to plaintiff by the bank, were returned to Lockwood. A note for $15,000 of the construction company, secured by a chattel mortgage as agreed, was delivered to plaintiff.

The court found, and the finding was unquestionably warranted by the proof, that plaintiff was grossly deceived by Banning and Lockwood; that the construction company was financially irresponsible at the time of the transaction above stated, and could not possibly meet the note when it became due — facts known to Banning and Lockwood. Upon discovering the fraud, plaintiff demanded of Banning and Lockwood that his $15,000 be returned to him. Of the $15,000 advanced, there remained $5,681.31, which was turned over to plaintiff by them. Plaintiff called upon the president of the bank and advised him of the fraud and demanded that he be restored to his original condition. This was denied to him. As a result, plaintiff has lost $9,318.69. In this action plaintiff seeks to have the entire transaction rescinded and to recover from the defendants the amount out of which he was cheated. The court has held that the bank was liable for this amount. The bank appeals and challenges the correctness of this determination.

It clearly appears that the bank benefited in at least two respects: (1) payment of its past due note; (2) transfer by it to plaintiff of a chattel mortgage on property which did not exist. Bearing in mind that Banning and Lockwood had authority from time to time to collect obligations due to the bank, and there being no proof on the part of the bank that they were not authorized to collect this debt, the court was warranted in inferring that they had been authorized by the bank to collect this note. In the course of their endeavor in that direction, they have defrauded the plaintiff. To urge a third party seeking an investment to loan money to a customer who thereby is enabled to pay a debt to the bank, is fairly and reasonably incidental to authority to collect the debt. Although the method was not authorized, under the

circumstances the end was, and the bank is bound by the agents' acts. The facts here, including the resultant benefits to the bank, bring the case within the suggestions of the prevailing opinion in *Taylor* v. *Commercial Bank* (174 N. Y. 181), and make out a far stronger situation than that which brought the minority of the court to the conclusion that the cashier in that case was acting within the scope of his authority in making false representations concerning the financial responsibility of a depositor to a third party to the latter's injury. In any event, the bank must be held liable upon the theory of unjust enrichment. As pointed out, it not only benefited by the payment of the note held by it, but it made a transfer directly to plaintiff of its chattel mortgage as security for the first advance of money. In effect, the bank sold its chattel mortgage to plaintiff. Having received the fruits of the fraud of Banning and Lockwood, who had authority to collect the note, it thereby, though innocent, adopted the means by which those fruits were plucked, and is responsible to the extent of the damage done. (*Taylor* v. *Commercial Bank, supra; Green* v. *des Garets*, 210 N. Y. 79.) That the action is equitable in form should make no difference. If the payment of the note held by the bank by money advanced to the maker by plaintiff through the fraud of the bank's agents be deemed a benefit obtained by fraud as to a collateral matter, for which the bank would not be liable within the purview of statements in *Deyo* v. *Hudson* (225 N. Y. 602) (see, however, *Taylor* v. *Commercial Bank*, 174 id. 181), the uncontradicted proof is that the defendant bank had a direct connection with the transaction in that it assigned the chattel mortgage, held by it as security for the $2,450 note, to the plaintiff as collateral to the initial advance of $10,047.50. A bank, especially one in the metropolitan district, has numberless contracts of various kinds with the public. In order to advance its interests, its officers are readily accessible for advice and information. Competition is keen, desire for business endless, and opportunity for expansion eagerly sought. When, not as a matter of courtesy, but in order to collect a debt and to dispose of collateral, a bank through its agents misleads a third party to his injury with reference to the financial affairs of one of its customers, it seems to me that the bank should be held liable for the injury done. That was the situation here. The action was brought, in effect, to set aside the transaction by which the plaintiff was defrauded and to recover the damages suffered by plaintiff incidental thereto. In conjunction with equitable relief, the court had power to render judgment against defendant bank for the injury sustained by plaintiff

35

as a result of the fraud. (*Mack* v. *Latta*, 178 N. Y. 525.) As it clearly appeared that the construction company was hopelessly insolvent, it would have been useless to provide that recovery should be first had as far as possible out of it, and the balance to be collected from the other defendants. The defendants were jointly and severally liable for the fraud. (*Green* v. *des Garets*, 210 N. Y. 79.) The appellant bank claims that plaintiff cannot recover because he omitted on the trial to offer to return to defendant construction company its note, and to defendant bank the $2,450 note and the chattel mortgage which had been transferred. The bank has no cause to complain that the rights of the defendant construction company, if any, were not conserved. The $2,450 note and the original chattel mortgage were surrendered by plaintiff as a part of the fraudulent transaction and were no longer in his possession. It was through the fraud of defendant that those two instruments were surrendered. Plaintiff had made appropriate tender before action commenced. The decision provides that the note of the construction company and the chattel mortgage given to plaintiff should be surrendered upon payment of the judgment. This met the duty of plaintiff in an action such as this. The judgment does not contain such a provision — probably an inadvertent omission readily cured. Appellant does not request it. It is also urged by appellant that the bank cannot be bound because its agents were acting in the same transaction for their personal advantage, thereby becoming disqualified to act as agents. Such rule may apply where the act is for the benefit of the agent and is antagonistic to the interest of the principal. (*Henry* v. *Allen*, 151 N. Y. 1.) Here the interests of Banning and Lockwood were not antagonistic to that of their principal. What they did was intended not only for their own indirect benefit, but was at the same time actually for the benefit of the bank.

The judgment should be affirmed, with costs.

KELLY, P. J., YOUNG and HAGARTY, JJ., concur; KAPPER, J., dissents and votes for a modification of the judgment against the appellant bank by reducing the recovery to the sum paid to the bank on its surrender of the chattel mortgage.

Judgment affirmed, with costs.