Alexander Del G-iorno, J.
This is a claim arising out of a contract entered into "between the claimant and the State, acting through the Conservation Department of the State of New York, for the construction of a timber dock and the installation of a sludge pipe line from the 26th "Ward Sewage Treatment Plant in the Borough of Brooklyn to Canarsie Pol in Jamaica Bay, which contract was dated September 10, 1954 and bore contract No, 3934.
*512 As part of a plan to develop Spring Creek Park, Borough of Queens, for a wildlife conservation project, the State of New York, through the Conservation Department, and the City of New York, through its Park Department, joined in the project.
The claimant demands of the State the additional sum of $68,940 over the original contract bid of $48,000 upon the grounds that the State, (1) directed and compelled claimant to furnish material and to do work in the performance of the contract far greater than contemplated by the contract; (2) withheld from claimant material information in its possession prior to bidding as to subsurface conditions existing at the sites of the proposed work and misrepresented the conditions which would prevail at these sites during the performance of the contract, and (3) knowingly made false and incorrect representations to claimant as to the subsurface conditions.
A sludge pipe extending for 6,000 feet was to be laid at the bottom of the bay between Hendrix Creek on the north and the proposed pier at Carnarsie Pol on the south.
The Park Department took all the soundings in the area involved, drew all required plans and supervised generally the work which was done. The Conservation Department advertised for bids for the construction of the timber dock and the installation of the sludge pipe line. The city furnished the pipe but the bid offer was made by the State only. On that bid the claimant was low bidder for $48,000.
Although the court is satisfied that the extra amounts set forth by claimant probably were expended by it, the question involved, assuming such expenditures, is whether claimant is entitled to compensation therefor by the State.
There is no evidence presented which would justify a finding of fraud or misrepresentation on the part of the State. It may well be that errors or omissions were committed by the city engineers in taking the soundings at the bottom of Jamaica Bay along the prescribed pipe-line course. Since the soundings had been taken in about February, 1953, a year and a half before the award of the contract, it may be also that the admittedly strong tides in the bay had changed the bottom completely from what it was then to a different condition from what claimant found at a later date, as hereinafter described. On such a state of facts the court might have found claimant to have been entitled to many items of its proven “ extras ” for labor, services and material because of the gross negligence of the State. The State was responsible for the plans as drawn by the City of New York and all the acts of the city engineers who were acting under its supervision are imputable to the State. (Fair- *513 child v. McMahon, 139 N. Y. 290; Green v. des Garets, 210 N. Y. 79; Taylor v. Commercial Bank, 174 N. Y. 181; Krumm v. Beach, 96 N. Y. 398.)
Certain items of damage occurred while the contract was being performed. For example, a hurricane and unusually strong tides caused a break in the piping being laid down. This damage, caused by the elements, the court believes to be a hazard accepted by claimant for which the State cannot be held responsible.
Shortly after the acceptance of claimant’s bid but before the commencement of the contract performance by the claimant, it, the claimant, had soundings made in accordance with the contract requirements. The State claims that these soundings were made in August, 1954, but the court finds they were made in September, 1954, after the State accepted the bid. These soundings indicated a very material difference in the bay bottom, both higher and lower than indicated on the plans. It is the feeling of the court that claimant, on the basis of those findings, could then have repudiated the contract or demanded that the State concur in writing in such new findings by claimant and agree to pay for the indicated extra labor and materials. The claimant did not repudiate the contract nor obtain from the State an admission that the new, findings were correct. On September 22, 1954, however, the claimant wrote to the Department of Parks, as the supervisor of the contract, the following letter:
“We refer to our contract for construction of timber dock and installation of sludge pipe line at Oarnarsie Pol, Jamaica Bay, Brooklyn, New York.
“ Our specifications specifically provide that the drawings show the general alignment of pipe with reference to which way it shall be run and the contour of the bottom of the Bay.
“ The drawing which we bid on and which is referred to in the specifications represented to us that the approximate profile of the bottom of the Bay was such that the placing of the sludge line and anchoring it as provided for in the specifications could be performed in a reasonable manner and by a reasonable method and without the use of floating and dredging equipment.
“We have now had a licensed surveyor examine and check the said bottom and find that instead of the bottom being as represented on your contract plan, between Stations 23 + 50 to 33 + 50 the situation is such that in order to install this sludge pipe line as shown on the drawings, floating and dredging equipment, together with divers and diving equipment will be required for the reason that instead of having a bottom within *514 the aforesaid stations as shown on the contract plan, we find a condition altogether and materially different.
“We are enclosing herewith a drawing showing the conditions between Stations 23 + 50 to 33 + 50 and you will observe that the conditions between those two stations are altogether different from those represented on your contract plan. The bottom is 12 feet deeper than shown on your plans. We are now required to lay the pipe in 44 feet of water.
“Due to this condition, we estimate that our costs will be increased approximately $3,500.00 plus additional overhead and profit.
“ In order for us to perform this work as contemplated under the contract, it will be necessary that we be reimbursed for the cost of all required dredging and use of floating equipment, divers and diving equipment, and we ask that before we start this work you notify us of the manner in which we shall be so compensated.
“We are resubmitting a letter in which we ask permission to use galvanized steel in lieu of stainless steel for the cable, cable clips, eye bolts and thimbles. You have given us permission to use bent anchors in place of the eye bolts. We were able to procure 3/8" stainless steel rods for these so the eye bolts referred to in the above mentioned letter are no longer a consideration.
‘ ‘ Since the delay mentioned in our letter is as much concern to us as the $3500.00 out of pocket costs mentioned, we suggest that you allow us to substitute galvanized steel cable, .clips and thimbles for stainless steel, in exchange for our absorbing the additional costs of the $3500.00 due to the difference in the Bay bottom. We could then proceed with the work immediately and avoid the possibility of extending the completion of this work into 1955.
‘ ‘ Please give us your immediate reply so we can get underway immediately.”
At the time this letter was written, the claimant was in possession of all the information and knowledge it required to perform its contract and was aware of the subsurface conditions with which it had to contend. In the letter, when the claimant was in possession of all the information it needed to perform its contract, it requested an increase of $3,500 plus additional overhead and profit. The court must construe this letter as a bid of $48,000 plus $3,500, a total of $51,500, for a contract under which were disclosed to claimant all the facts and circumstances to be met. It could not any more claim deception or misrepre *515 sentation on the part of the State and yet proceed with the contract.
It may be pointed out that the instant contract was the first of its type into which claimant had entered. The president of claimant knew nothing of this kind of operation and had to rely on employee engineers to make up the bid and to write the subsequent letters. These letters do not disclose an awareness of committing claimant to the extra costs without first obtaining a simultaneous assurance from the State of receiving payment therefor.
On these facts, it appears that were the court to accept claimant’s contention that it should be compensated for the “ extras ”, the court would be substituting for the contract a “ cost plus profit ” agreement.
A contract, like the purchase of a home, can be a “ good buy ”, a “buy”, or a “ poor buy”, depending generally upon the “ know-how ” and expertness of the parties thereto preliminary to the execution of the contract. Once made, however, it is binding upon both parties. A ‘ cost plus profit ’ ’ contract, on the other hand, is one fraught with danger for a public corporation, for it would have to pay to the last cent, with profit to boot, whether or not the contractor was able and whether or not he performed the contract adequately.
The court determines that claimant is entitled to the sum of $3,500 plus 10% overhead, or $3,850, plus 10% profit, or a total of $4,235 with interest thereon from November 21,1955, the date of the acceptance of the contract.
The findings of fact and conclusions of law submitted by the State and the claimant have been passed upon and marked to correspond with this decision.
This memorandum constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.