Chief Judge Breitel
(dissenting). There is no disagreement in the court with the issues discussed in the majority opinion other than with the threshold issue: whether the prescribed manner of serving a violation order of the New York City Fire Commissioner is indispensable to conviction for the misdemeanor of willful refusal to comply with the order (Administrative Code of City of New York, § 488-1.0). Assuming service as prescribed is required, also at issue is whether defendant’s lawyer was his agent for accepting service of the order.
The prescribed manner of service of the order is indispensable, and there was insufficient proof to establish that defendant’s lawyer was his agent for accepting service. I therefore dissent and vote for reversal and dismissal of the complaints.
It is not willful failure to correct fire hazards that amounts to a misdemeanor under the Administrative Code. The con *140 duct penalized is willful noncompliance with a fire department violation order. Unless proper service of the order is established, actual notice notwithstanding, it cannot be said that defendant committed the offense.
Defendant landlord, evidently in the business of rebuilding and rehabilitating run-down tenements, appeals from a unanimous affirmance by Appellate Term of his conviction, after a nonjury trial in the Criminal Court of the City of New York, of willful noncompliance with orders of the Fire Commissioner (Administrative Code, § 488-1.0).
The fire department violation orders,* issued after a number of inspections in early 1975, direct defendant to correct specified hazards existing in twin multistory apartment buildings located on the upper east side of Manhattan. Defendant, for all practical purposes, became sole operator of the buildings in February, 1975, at which point title was in Mawash Realty, one of a number of close corporations in which defendant had an interest. By the end of 1975 at least a dozen fires in the buildings were reported, and by 1976 only three of 120 apartments were still occupied.
Defendant was ordered, among other things, to remove accumulations of inflammable rubbish from all floors and the cellar, to maintain the cellar floors clean of waste oils, and to provide covered receptacles for rubbish. It is not disputed that the orders, for the most part, went unheeded.
Service of the orders was not made on defendant personally or by the alternative substituted service authorized by the Administrative Code (§ 491al-2.0). Instead, on May 29, 1975, the papers were given to defendant’s lawyer, Frederick. Frederick, together with three members of the fire department, was in court that day in relation to other charges against defendant, not involved on this appeal, stemming from noncompliance with still other orders to correct violations in the Manhattan twin buildings.
Frederick assertedly told Captain Travis of the fire department that defendant wished to comply with the outstanding violation orders, but that he did not have a list of the violations. According to Travis, Frederick asked for duplicates, stating, in response to Travis, that he was authorized to accfept the orders on his client’s behalf. Frederick, on the other hand, denies having claimed authorization to accept the *141 orders for defendant Sakow. While Travis’ men went outside to obtain a violation order book, Frederick complained to Travis about the prohibitive cost of making the repairs and Sakow’s unsuccessful efforts to evict the few remaining tenants. Upon return of the firemen, copies of the existing violation orders were made, at the bottom of each "Mr. Edwin Frederick for Walter Sakow” was written, and the orders were handed to Frederick.
Frederick testified that either later that day or the following he read the violations to Sakow over the telephone.
By June, 1975 title to the twin buildings had been transferred from Mawash to Justin Properties and Lescal Realty, corporations formed by Frederick at defendant’s request and in which defendant was a shareholder. The violations, as noted however, went uncorrected. Finally, in two complaints sworn to in early 1976, Sakow was charged, under section 488-1-.0 of the Administrative Code, with willful failure to comply with the orders given to Frederick the previous May. The complaints were based on inspection of the buildings in December, 1975 and January, 1976.
The complaints were consolidated for trial together with a third later dismissed with the prosecutor’s consent. Defendant waived a jury trial and did not testify. Following conviction, he was fined and sentenced to three years’ probation. Except for the requirement that the fire hazards be corrected, a requirement stayed pending this appeal, the conditions of the probation apparently have been satisfied.
To ensure compliance with the laws the fire department is charged with enforcing, the Administrative Code authorizes the issuance of orders directing building owners or occupants to correct violations (§ 491al-1.0). Directly following the code section authorizing issuance of violation orders is a section captioned "Service of orders”: "Service of any such order may be made by delivery of a copy thereof to the owner or any one of several owners, to a lessee or any one of several lessees, or to any person of suitable age and discretion in charge or apparently in charge of the premises, or if no person be found in charge of the premises then by affixing a copy of such order prominently upon the premises.” (§ 491al-2.0.)
Failure to comply with violation orders may result not only in civil fines and penalties, but in criminal liability as well (Administrative Code, § 488-1.0). Thus, "[a]ny person who shall wilfully violate, or neglect, or refuse to comply with any *142 provision or requirement of this chapter or any regulation, order or special direction duly made thereunder, shall also be guilty of a misdemeanor” (§ 488-1.0).
The violation orders were not delivered to Sakow personally. They were not delivered to one of the remaining tenants. There is no proof that Frederick was responsible for operation of the buildings; he was not found on the premises; and hence by no stretch of the statutory language in context can he be treated as "apparently in charge of the premises”. Most important, no finding below was made or can support the view that Frederick was "apparently in charge”. Nor were the violation orders affixed to the twin buildings. It is argued that the orders may serve as a predicate for a misdemeanor conviction nonetheless, for it was proved that Sakow had actual notice of the outstanding violations.
True, Frederick admitted reading the list of violations to Sakow shortly after he received them from Captain Travis. But, especially in treating with a penal sanction, the fact of actual notice should not be substituted for the prescribed manner of serving the underlying violation order. The service provision in the Administrative Code was, undoubtedly, designed to ensure actual notice as a prerequisite to criminal culpability. It does not follow, however, that proof of actual notice may replace the required service (cf. McDonald v Ames Supply Co., 22 NY2d 111, 114-115).
Nowhere in the Administrative Code does it state that actual notice of the order may replace proper service. Actual notice may be difficult to prove. The proof offered to establish actual notice may not be reliable. In the instant case it is the testimony of Frederick, the unofficial communicator of the order, not that of defendant himself, upon which the People rely to prove notice. To avoid uncertainty and unreliability, and to encourage careful practice, the code sets forth how service shall be made. Willful noncompliance with an order, therefore, is not the whole of the crime; it must be proved, beyond a reasonable doubt, that the order and the notice it contains was one properly served.
The majority concedes that criminal liability is not "to be imposed on a landlord simply because violation orders have come to his attention” (p 138). The statement is nullified, however, if actual notice may supplant the statutory service requirements.
It is significant, too, that the service provisions at issue have *143 been on the statute books for over 40 years. They were enacted as part of the 1937 restatement and codification of the Administrative Code, and have remained unaltered since (see L 1937, ch 929; see, generally, 1936 Report of the New York City Charter Revision Commission, ch 19). Yet, no case has been discovered diluting the mandated service provisions with the less stringent actual notice substitute now sanctioned by the majority.
Of course, if there is a fire hazard in violation of the Administrative Code, the imposition of civil penalties is appropriate. Civil penalties, however, are not at issue in this case. Involved instead is a criminal sanction, and, it bears repeating, unless it is proved beyond a reasonable doubt that defendant’s willful noncompliance was with an order properly served, he may not stand convicted of the crime.
Nor does the record, contrary to the Trial Judge’s conclusion, sustain the People’s assertion that Frederick was defendant’s agent for accepting service of the violation orders. Even Frederick’s purported assertion of authority, as testified to by Captain Travis, is to no avail. An agency may not be self-proving (e.g., Taylor v Commercial Bank, 174 NY 181, 191; 2 NY Jur, Agency, § 29). That Frederick was designated to accept service of process for Lescal Realty and Justin Properties, and that as a lawyer he may have acted for defendant in a number of commercial transactions, including some relating to the twin buildings, does not establish a general authorization to accept service of the violation orders for defendant.
In sum, service on Frederick is not equivalent to service on defendant. No proper service having been made, the charges of willful noncompliance cannot stand. The nature of defendant’s business, that of an entrepreneur who profits from the rehabilitation of almost empty decayed buildings, some of them in conditions as dreadful as these twin buildings were, should not impel a court to disregard the traditional distinctions between notice, service of process, and the basis for criminal punishment for willful disobedience of orders requiring affirmative action. The remedy is so easy: correct service of notices and orders upon those who may suffer penal sanctions.
Even if defendant be a malevolent owner of decayed buildings, to deprive him of the due process mandated by statute, or to gloss over or deviate from the statutory requirements applicable to building owners, would not be justified. It ap *144 pears, however, that this defendant’s activities are not wholly without social benefit. He performs, albeit for his own profit, a useful function in rehabilitating properties neglected by others, a task he cannot undertake until the buildings are vacated by lingering tenants, in this case the occupants of two or three apartments out of 120. Whether slumlord or rehabilitator, an owner most certainly should be prosecuted if in willful noncompliance of violation orders he permits dangerous conditions to continue while even one tenant lawfully occupies an apartment. On the other hand, since defendant must live by the letter of the law, he should not be condemned in disregard of the law. The result in this case would allow just that.
Accordingly, I dissent and vote to reverse the order of the Appellate Term and dismiss the complaints.
Judges Gabrielli, Wachtler and Cooke concur with Judge Fuchsberg; Chief Judge Breitel dissents and votes to reverse in a separate opinion in which Judges Jasen and Jones concur.
Order affirmed.
*144a > H CITY OF NEW YORK FIRE DEPARTMENT DIVISION OF FIRE PREVENTION VIOLATION OKBER 15A-160 East 91st Street Manhattan Addréea of 1’remiaee tioro Walter Sakow . Sum.35-017888-3' Ret.Date 1/22/76 A-16 <5/74) No. F02L007 Mawash_ Neme of Owner, Leasee, Occupant, etc. ._AJi____FLD.__ llnom No. or Floor Typ- of Occupancy Account No. ItrmNo. ItrmNo. VIOLATION ORDER FP-1-2 Provide / Refill fire pails of sand/wntcr at Total FP-3-4 Provide / Refill for) recharge approved fire evtinguishers at KP- 7 Provide properly covered fireproof receptacles for inflammable rubbish at FP-11 Provide “No Smoking" signs at Total FP-12 Remove all accumulations of inflammable rubbish from and maintain all parts of premises free from such accumulations at all times {Comply FORTHWITH) FP-13 Reduce height of stock to not less than 18 inches of ceiling or sprinklers at FP-15 Discontinue storage, sale, or use of volatile flammable liquids. FP-17 Discontinue use of open flame at FP-20 Remove empty containers of flammable liquids from premises. FP-21 Maintain floors clean of waste oils. FP-25-26 Provide Exit signs/Red lights over exit signs at Total FP-27 Maintain adequate aisle space not less than 36 inches at FP-28 Remove all obstructions to meuns of egress at FP-30 Remove grease, paint, or other accumulations from hoods or ducts on FP-42 Replace missing or defective hose on standpipe outlet at FP-&6 Remove all obstructions to sprinkler control valve at FP-60 Seal sprinkler control valves “open” with approved seals at SP-12 Arrange (scuttlc/bulkhcad door) to be readily opened from the inside without the use of a key. SP-15, 16.17, &10 Provide that door of (public hall/dumbwaiter/roof bulkhead/rubbish chutc/laundry chute hopper/kitchen/ incinerator chute hopper/garage/garage vcstibule/stairway/storc room/rubbish room/incinerator room/ boiler room/maintenancc room) located at be. self closinp/nlaced in good operating condi lion/maintained closed. SP-19 Maintain adequate light in (public hall way/public stairway) at SP-34 Properly scrape and paint with two coats of paint the (fire escape/exterior screened stairway) on (front/rnar/ side) of building. SP,35 Properly replace all defective portions of the (fire escape,■'exterior screened stairway) at the side of the building. All windows and doors which open upon the course of the (fire escape/cxtcrior screened stairway) are to be repaired and all work showing corrosion is to be scraped and painted with at least two coats of paint. SP-38 Provide that the self-closing (door/wtndow) opening on the course of the (fire escape/exterior screened stairway) on the side of the building on the storv. be (placed in ennd operating condition/ maintained closed). SP-39 Provide that the door serving as reouired means of egress at be. readily openablc from both sides without the use of a key. SP-42 Store (paint/paint drop cloths) in approved storage (area/room/cabinet) at SP-53 Replace (used/damaged/missing) sprinkler head at SP-63 Remove electric current cube taps being used at SP-64 Discontinue use of temporary wiring being used in place of fixed wiring ul SP-80 Properly store (mattresscs/furniture/paints/insecticides) in approved storage (compartment/room) at\ SP-81 Provide temporary protection of unused dumbwaiter shafts by means of nailing doors closed and scaling of unprotected openings on all floors, including cellar, (skylights shall remain) pending compliance with the requirement of the Department of Buildings. 1 FO-2 Provide two (2) round bottom sand nail a os one annroved hand Fire extinguisher suitable for oil Fires to be made available at each boiler or furnace. 2 F0-8 Label remote control or Fuel Oil svstem with sien "REMOTE CONTROL FOR OIL BURNER". If this order has not been complied with, in days of the issuance date (or forthwith for those violations designated “comply FORTHWITht'3’). a summons will be served for violation of Chapter 19 of the Administration Code of the City of This is to certify that I huve made on inspection of said premises and have issued the above order to: Ftte Commissioner Mr. Edwin Frederick For Walter Sakow Fr. Connolly 5/29/75 Name of person who tn rived this urde Importan I: See instructions on reverse side. Owner/A sent/Occupant Inspector Dale For informnlion, inspection or dismissal contact inspection unit; _ ..... Unit Telephone_

The order itself both provides notice of the violations and orders their correction. A copy of one of the orders involved is annexed as an appendix.