MILES R. MARTIN, JR., Respondent, *v.* THE GOTHAM
NATIONAL BANK OF NEW YORK, Appellant, Impleaded
with Others.

**Banks and banking — fraud — false representations — sub-
ordinate officials of bank may do only such things in connection
with collection of note due it as banking practice and business
custom recognize — false representations made by them to
induce loan to corporation in which they were financially
interested — use of part of loan to pay, amongst other debts,
a note due to bank — knowledge of false representations may
not be imputed to bank — no presumption that its officials
disclosed to it that they were engaged in a fraudulent trans-
action — bank liable for amount received in payment of note
by its agent who had knowledge of the fraud.**

1. Subordinate officials of a bank, empowered to collect notes due
it, have the right to do only such things in connection therewith as
banking practice and business custom recognize as adequate. They
have no implied power to endanger the capital of the bank in an
extravagant attempt to collect a small debt.

2. Where, therefore, an assistant vice-president and a special répre-
sentative of defendant bank, through false representations, induced
plaintiff to make a large loan to a corporation in which they were
interested, part of which was used to pay off its debts, amongst which
was a comparatively small note due the bank, a finding, in an action
to recover the amount loaned, that the bank knew of the false repre-
sentations, cannot be sustained where it appears that none of its
officers or employees, except the two mentioned, knew anything of
their plan. They had no right even if they acted honestly to make
such representations in behalf of the bank for the purpose of collecting
its note and, consequently, their knowledge of the false representations
is not the knowledge of the bank.

3. Nor can additional findings that the two officials were acting
for the benefit of the bank and that the whole loan was made in the
course of their efforts to help the bank, be sustained, where it appears
that they were both financially interested in the corporation to which
the loan was made, that its president had informed them that pay-
ment of its pressing debts would enable it to complete its contracts
and make money and that the bank was but one of several creditors
paid out of part of the amount borrowed. Notice to the bank could
rest only upon the presumption that the officials in question disclosed

to it all of the facts that came to their knowledge and, under the circumstance that they were engaged in a fraudulent transaction by which they planned a primary benefit for themselves, such presumption does not prevail.

4. The bank is not liable for the acts of its employees acting beyond the scope of their authority and engaged in the commission of a collateral fraud, but it is liable for the amount accepted by it in payment of the corporation note through its special representative. As the bank's agent, he was empowered to receive it. With knowledge of the fraud he paid it to the bank and his knowledge must be imputed to it.

*Martin* v. *Gotham National Bank*, 220 App. Div. 541, modified.

(Argued May 8, 1928; decided May 29, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 26, 1927, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Leonard G. Bisco* and *Louis S. Posner* for appellant. The misrepresentations of Banning and Lockwood occurred while pursuing their individual interests for the joint benefit of themselves and the plaintiff; their acts were neither within the scope nor color of their agency for the bank. (*De Swarte* v. *First Nat. Bank*, 188 Wis. 455; *Shriver* v. *Fourth Nat. Bank*, 121 Kans. 388; *Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Brookhouse* v. *Union Publishing Company*, 73 N. H. 368.) The rule of imputed knowledge has no application where, as here, the agents are engaged in their own independent enterprise. (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *Benedict* v. *Arnoux*, 154 N. Y. 715; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Henry* v. *Allen*, 151 N. Y. 1; *Mayor* v. *Tenth Nat. Bank*, 111 N. Y. 446; *American Nat. Bank* v. *Miller*, 229 U. S. 517; *American Surety Co.* v. *Pauly*, 170 U. S. 133; *Lilly* v. *Hamilton Bank*, 178 Fed. Rep. 53; *Bank of Overton* v. *Thompson*, 118 Fed. Rep.

798; *Hilliard* v. *Lyons*, 180 Fed. Rep. 685; *Real Estate Trust Co.* v. *W., A. & Mt. V. Ry. Co.*, 191 Fed. Rep. 566; *Cushman* v. *Amend*, 176 App. Div. 224; *Allen* v. *South Boston R. R. Co.*, 150 Mass. 200; *Brady* v. *Mt. Morris Bank*, 65 App. Div. 212; *Bank of LeRoy* v. *Purdy*, 100 App. Div. 64; *Fowler* v. *Walch*, 119 App. Div. 542.) The bank's receipt of payment of the Montville Construction Company note for $2,450 is not in any sense a ratification of the fraud of Banning and Lockwood. (*Krumm* v. *Beach*, 96 N. Y. 398; *Miller* v. *Barber*, 66 N. Y. 558; *Garner* v. *Mangan*, 93 N. Y. 642; *Jones* v. *Jones*, 120 N. Y. 589; *Fairchild* v. *McMahon*, 139 N. Y. 290; *Green* v. *Des Garets*, 210 N. Y. 79; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Deyo* v. *Hudson*, 225 N. Y. 602; *Baldwin* v. *Burrows*, 47 N. Y. 199; *Smith* v. *Tracy*, 36 N. Y. 79; *Foote* v. *Cotting*, 195 Mass. 55; *Shriver* v. *Fourth Nat. Bank*, 121 Kans. 388.) Assuming that the defendant bank was bound by the knowledge of Banning and Lockwood, its liability would not extend beyond the sum actually received by it. (*Deyo* v. *Hudson*, 225 N. Y. 602; *Baldwin* v. *Burrows*, 47 N. Y. 199; *City Nat. Bank* v. *Nat. Park Bank*, 32 Hun, 105; *Wendt* v. *Fischer*, 243 N. Y. 439; *Carr* v. *Nat. Bank & Loan Co.*, 167 N. Y. 375; *Credit Alliance Corp.* v. *Sheridan Theatre Co., Inc.*, 241 N. Y. 216; *United States* v. *State Nat. Bank of Boston*, 96 U. S. 30.)

*Isaac H. Levy, George Gordon Battle* and *Ludlow S. Fowler* for respondent. Banning and Lockwood having acted within the actual and apparent scope of their authority, the bank is liable for their fraud. (*Fifth Ave. Bank* v. *42nd St. & G. St. F. R. R. Co.*, 137 N. Y. 231; *East River Nat. Bank* v. *Gove*, 57 N. Y. 597; *Fishkill Savings Inst.* v. *Nat. Bank*, 80 N. Y. 162; *Nowack* v. *Met. St. Ry. Co.*, 166 N. Y. 433; *Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652.) The bank's receipt of the benefits of the transaction coupled with its willful refusal to make restitution operated as a ratification of its

agent's fraud. (*Bennett* v. *Judson,* 21 N. Y. 238; *Rocky River Devel. Co.* v. *German American Brewing Co.,* 193 App. Div. 197; *Fairchild* v. *McMahon,* 139 N. Y. 290; *Bloomquist* v. *Farson,* 222 N. Y. 375; *Krumm* v. *Beach,* 96 N. Y. 398; *Bacon* v. *Union Mut. Life Ins. Co.,* 43 N. Y. 288; *Wakeman* v. *Dalley,* 51 N. Y. 34; *Garner* v. *Mangam,* 93 N. Y. 643; *Abraham* v. *American Ex. Nat. Bank,* 191 App. Div. 594; *Carr* v. *Nat. Bank & Loan Co.,* 167 N. Y. 375; *Chisholm* v. *Eisenhuth,* 63 App. Div. 135; *Fitzhugh* v. *Sackett,* 50 N. Y. 699.) There is no warrant for limiting the liability of the bank to the sum actually received by it. (*McCord* v. *W. U. Tel. Co.,* 39 Minn. 181; *Lloyd* v. *Grace, Smith & Co.,* 1912 App. Cas. 716; *Booth* v. *Farmers' & Mechanics' Nat. Bank,* 50 N. Y. 396; *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank,* 16 N. Y. 125.)

O'BRIEN, J. In April, 1923, the Montville Construction Company owed the Gotham National Bank $2,450 on a note. The collateral security was worthless and the note was overdue and had been protested. Charles H. Banning held a position as an assistant vice-president of the bank and Henry E. Lockwood was employed as a special representative. Each was empowered to collect notes payable to the bank. Individually and personally each held a financial interest in the Montville Construction Company and had induced several persons to loan money to it. In fact, the $2,450 had been loaned by the bank upon Banning's recommendation. April 7, 1923, the construction company agreed to elect Lockwood vice-president and treasurer, to issue to him forty shares of its preferred stock and to pay him a percentage of its profits. Banning, by an arrangement made the same day with Lockwood, acquired a half interest in such moneys as might be received by Lockwood.

During the first week in April, plaintiff, at the suggestion of a common friend, called upon Banning, stated that

he was seeking investment for his funds and requested Banning's advice. The relations between Banning and plaintiff were purely personal and arose from their acquaintance with that common friend. The bank was not concerned. Banning referred plaintiff to Lockwood and on April 10th he and plaintiff first met. Banning and Lockwood recommended the Montville Construction Company as a safe investment and on April 13 a contract was executed by plaintiff, Banning, Lockwood and the construction company. Lockwood as vice-president of the construction company executed it in behalf of that corporation. This agreement after reciting the existence of Banning's and Lockwood's interest in the construction company and the desire of the parties to finance that company and profitably to manage its business, provides for a loan of $15,000 by plaintiff to the Montville Construction Company in return for a ninety-day note for that amount made by the corporation, indorsed by its president and secured by a chattel mortgage. On the same day a second agreement was executed by plaintiff, Banning and Lockwood. This second contract recites the former one of that date and the fact of the absence of the president and his consequent inability to indorse the note, and provides for the immediate advance to the corporation by plaintiff of $10,047.50 in return for a note for that amount executed by Banning and Lockwood and payable April 20th. This note was to be surrendered and canceled by plaintiff upon delivery to him of the note for $15,000, as provided for in the earlier agreement of the same day and upon delivery of such a note plaintiff was to advance the balance of the $15,000. The agreement explicitly states that $7,000 of the $10,047.50 was to be used immediately for the liquidation of the corporation's debts which were then due and payable. Plaintiff loaned the $10,047.50 to the construction company by giving it to Lockwood, who was its treasurer, and Banning and Lockwood gave

their note to him for that amount. In plaintiff's presence Lockwood paid off $7,000 in obligations of the Montville Company. Among such obligations was the $2,450 note held by the Gotham Bank. Plaintiff later paid the balance of the $15,000 to Lockwood who deposited it in another bank to the credit of the Montville Company and the $15,000 note provided for in the agreement of April 13 was indorsed by the president of that company and delivered to plaintiff. The note for $10,047.50 executed by Banning and Lockwood was returned to them by plaintiff.

The court has found that all of the $15,000 was expended in payment of the Montville Company's debts except $5,681.31 which was returned to plaintiff. Judgment for $9,318.69 was directed against Banning, Lockwood, the construction company, its president and the Gotham National Bank. The bank appeals.

The finding by the courts below is that plaintiff was induced to make the $15,000 loan to the construction company by reason of Banning's and Lockwood's fraudulent representations concerning that company's financial resources and that the bank knew that the representations were false. Additional findings are to the effect that Banning and Lockwood were acting for the benefit of the bank in an effort to collect $2,450, that they made the fraudulent representations in order that the construction company might obtain money out of which to pay its note to the bank and that the whole advance of $15,000 was made by plaintiff upon the strength of the false representations made by Banning and Lockwood in the course of their efforts to help the bank.

As matter of law, the finding concerning the bank's knowledge must be rejected. The bank could possess no knowledge of the transaction except such as it might acquire through agents acting within the scope of their authority. None of its officers or employees, except Banning and Lockwood, ever heard of the elaborate plan

by which plaintiff was parted from his money. The issue is narrowed, therefore, to an inquiry whether these two employees possessed implied authority to engage in the complicated process of becoming stockholders and officers in a corporation and procuring a loan of $15,000 to that corporation in order that it might become able to pay a debt of $2,450 to the bank. They were empowered to collect notes payable to the bank. Their authority to perform that duty must, however, be limited to a power such as is usual and ordinary among minor bank officials and employees. (*Taylor* v. *Commercial Bank,* 174 N. Y. 181, 185.) They would not have represented the bank, if, using their personal funds, they had embarked in a joint venture in real estate or stock speculation with the bank's debtor to the end that the debtor could reap profits and discharge his obligation to the bank. They could not travel to some remote corner of the earth to inspect property worth huge sums and to take possession of it in behalf of the bank in exchange for the discharge of a paltry debt due the bank. They had the right to do only such things as banking practice and business custom recognize as adequate. They could interview the debtor, notify him of the passage of time by which his debt had grown overdue, consult attorneys, receive payment, surrender or cancel the note after payment, give receipts and go through the usual routine of collection. The exertion of the collector must bear some fair relation to the sums collected. The proportion between the effort and the result must be reasonable. Execution of unusual and extraordinary designs is not commensurate with small achievement. Subordinate employees have no implied power to endanger the capital and surplus of their principal in an extravagant attempt to collect a small debt. Banning and Lockwood transgressed every boundary by which their authority was confined. The bank is not answerable for their representations to plaintiff. They had no right, even if they had acted honestly, to

make such representations in behalf of the bank for the achievement of such a result. Their knowledge of the false representations by which plaintiff was induced to loan $15,000 to the construction company is not the bank's knowledge.

The additional findings that Banning and Lockwood were acting for the benefit of the bank and that the whole $15,000 loan was made in the course of their efforts to help the bank results from a false emphasis and a wrong perspective. These individuals who were financially interested in the construction company wished to finance it and profitably to manage its business. These facts are recited in the preamble to the first agreement of April 13, with plaintiff. The first step essential to that end was to pay the construction company's debts. The second agreement of April 13 provides for the payment of approximately $7,000 for the immediate liquidation of certain outstanding obligations. The court has found that from this sum the construction company paid $2,038 to Progressive Clay Company, $2,450 to the Gotham National Bank, $418 for payroll, $483.60 for employers' liability insurance, $1,500 to George F. Merritt and $536 to a firm of attorneys. To say that Banning and Lockwood were acting for the benefit of the bank is, in a sense, true. Equally true would be a finding that they were acting for the benefit of the other creditors whose debts were paid from the $7,000 fund. If accurate perspective be observed we see these two men primarily working for and promoting the benefit of the construction company in which they were financially interested. Only incidentally were they endeavoring to assist the bank. Incidental help to the bank and the other creditors was thought vital to the rehabilitation and prosperity of the construction company. The court found that Banning and Lockwood had been informed by its president that the payment of $7,000 of pressing debts would enable it to complete its contracts and make money. They were

personally engaged in a fraudulent transaction by which they planned a primary benefit for themselves. The presumption that under such circumstances they disclosed to the bank all the facts that came to their knowledge no longer prevails. Notice to the bank could rest only upon such a presumption. (*Henry* v. *Allen,* 151 N. Y. 1; *Brooklyn Distilling Company* v. *Standard Distilling & Distributing Company,* 193 N. Y. 551; *Bienenstok* v. *Ammidown,* 155 N. Y. 47, 60.)

The bank is not liable for the acts of its employees acting beyond the scope of their authority and engaged in the commission of a collateral fraud. (*Deyo* v. *Hudson,* 225 N. Y. 602.) Its standing in this respect is the same as that of the other creditors who were paid from the fruits of this dishonest scheme. If, however, any creditor accepted payment of his debt with knowledge that the money used to pay it had been fraudulently obtained from plaintiff, he must answer to the extent of that amount. Upon this principle, the bank is liable for the $2,450 accepted by it through its duly accredited agent who had knowledge of the fraud. Lockwood, as treasurer of the Montville Construction Company, paid to himself, as special representative of the Gotham National Bank, the amount due on the note. As the bank's agent, he was empowered to receive it. With knowledge of the fraud he paid it to the bank. His knowledge, while acting within the scope of his employment, must be imputed to the bank.

The judgment of the Appellate Division and that of the Special Term should be modified by reducing the plaintiff's recovery to the sum of $2,450 with interest thereon from April 13, 1923, and costs at Special Term, and as so modified affirmed, without costs of appeal either in the Appellate Division or in this court.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS and KELLOGG, JJ., concur; LEHMAN, J., not sitting.

Judgment accordingly.